This is the time set for our formal argument in the Robins v. Spokeo case on re-managing the Supreme Court of the United States, counsel for the Appellate Community. Good day, Your Honors. Welcome to the re-management of the Court of Robins with the Court of Commissioning I ask that you reserve five minutes to say something a little louder, please. With the Court's permission, I ask you to reserve five minutes for a moment. Will you serve your day, Your Honor? Counsel, please close your clock. Brothers, the procedural violations alleged this year meet Article III's concrete requirements for two independent reasons. First, the intangible harm that fair credit reporting is or dents still amounts to as a close relationship to a harm that is traditionally provided in basis of pursuit in an American agency's courts. Second, even if it doesn't have it, Congress appropriately protected the presumption of a moderate intangible interest for which consequential harm is especially difficult to prove or measure. Right, counsel? I'm sorry. Go ahead, Judge. Why are we even limited to those two issues? It seems to me that traditional Article III standing is alleged here. Basically, what this complaint says is, I tried to get work for a couple of years, and I couldn't, and it's your fault. So, why do we even need sort of all of this convoluted discussion of intangibleness and that? Your Honor, that's a report. The argument's got channeled all the way up through appellate review. Well, I understand that, but we haven't continued that. Our standing and jurisdiction are issues that we have to review to know if we were obliged to exercise jurisdiction as a court, even though we haven't. And so, regardless of how the parties have framed the issue, don't we have an obligation to just look at the complaint, look at Article III, and determine whether or not that there is standing? That is not an argument. We have pressed the court to exercise its judgment to reach an issue in court. So, excuse me. Well, did the Supreme Court tell us, upon remand, to examine whether or not a concrete injury has occurred in this case? That is the way the question was framed, yes, Your Honor. So, why are we even going to answer the question the way it was framed? I would be pleased to. And really, the two answers that I set forth up front answer that question, too. Well, what is the concrete injury, specifically? And this is putting aside particularization on the other side. What is the concrete issue, the concrete injury that was alleged in your complaint? The concrete injury, the parties of the court have used three interchangeable words, interest, injury, and harm. I think they've all been used in the same place. But we believe the concrete injury are the economic and professional and reputational concerns that they come with to enact this statute. Well, you have to have more than concerns. You have to be able to say that because of this report that was put out by Spokio, I applied, having applied for a job, was turned down for a job because of this injury that was caused by Spokio. Can you say that? We have not said that. I respectfully disagree with Your Honor. That is the question that is asked by the preamble. Now, we need another way of simply saying that Mr. Roberts must show intangible harm. And if the Supreme Court's decision said one thing, it said, the interchangeable injuries, which are statutory rights, are no less concrete than candidate injuries. When Mueller said that tangible ones won't do, I really was pretty surprised to hear you walk away from that. Because certainly some, I mean, the Supreme Court's message was you still have to satisfy our inquiry, even if there is statutory standing. But I don't take them to mean that tangible harms aren't good enough. No, Your Honor, but I have to be candid with Your Honor and say that we've outlined the argument before the Supreme Court. I understand you didn't press the argument, but the complaint says, I looked for work during this whole period. I didn't find it any to your fault. And plus, I had emotional distress damages, too. But why isn't that sort of the beginning of the end-level case? How do we press the argument? It could be another case, and I respect Your Honor's view that that would be good. And you don't think that we have an obligation to determine that All aspects of jurisdiction will be argued in Vermont. What I would say, Your Honor, is we have offered a theory of standing, which we think can easily satisfy the remaining questions from the Supreme Court. I suppose you're wrong about that theory. Then what do we do? I'm only speaking for myself and asking questions, not through the panel, obviously. But let's suppose we disagree with you on the statutory standing. Aren't we supposed to just walk away from it, even if we think there's an allegation of breaking our multivision standing? I would not, in my support of what you should do. All I can tell the Court is that we have not pressed the argument, and we would like to press forward on the argument. We really do have a straightforward case for standing under a Supreme Court decision scope, and we really think some of the easier cases, Mr. Gosselaar, you've done it. The individual injury here is economic and reputational concerns. I have difficulty understanding how you alleged any reputational damage, because I understand your allegation. Correct me if I'm wrong, you're alleging that he, spoke to your people, said about your men that he was weary, professional, had children, had a high income, and was normal outside of certain areas that were in, was not planetary per se. Correct. Xavier states, I can't, maybe I have a different thought or something, that said, in order for there to be a reputational injury, don't we have to know what his reputation is, and how these representations harm him, is he going to have a reputational injury? So for instance, you say that being wealthy and being married indicates that he's going to have a higher salary, that he cannot move from place to place, and it inhibits his economic prospects. But we don't know if Mr. Robbins is a man who is indeed weary, and thus the ability to move around. We don't know those things. His reputation now is that of a deliveryman or a plumber who wants to stay at a low-end, low-wage job, and in one place. That's one thing that he's referring to. But don't you have to allege what his reputation is in order to show that these statements are a damage to his reputation? I'd like to explain why we want this. The inquiry I just spoke to is not about the intuition. It's about the type of harm that he claims. The Supreme Court made that clear at the end of his opinion. So the question before this Court is, are the types of allegations that are issued here, meaning inaccurate information about your personal wealth, your age, your employment history, and your marriages, are those the types of harm that go to the heart of the statute? And we know this because the Supreme Court said, once you meet that test, no additional showing of harm, beyond that which Congress identified, is necessary. Those types of questions, to the end, are really another way of saying what Spokiel argued the Supreme Court had lost, which is some showing of tangible harm is required. Those are all excellent examples of tangible harm. But we're dealing here today with the tangible harm. And we know this further. And finally, we want to go back to the moot hunt. You're not ignoring the moot hunt. I don't know anything that falls directly from the moot hunt. The moot hunt says, first, the plaintiff must have suffered an injury in fact, an invasion of a legally protected interest, which is concrete. Exactly what I'm thinking about. So what is the injury in fact that occurred here? And the key words in that phrase are legally protected interest. The interest must be concrete. And what the Supreme Court was saying is, just like constitutional rights are concrete, the Court would use two constitutional examples in its opinion. I don't know about the rights, but I'm still struggling to find out where is the injury here. So that has been alleged in your complaint. So if the interest is concrete, legally protected interest, and you allege that your statutory right to that interest has been violated, you have a concrete interest, so long as it is not divorced from the statute. So zip codes, while we take technical violation of the concrete statutory interest, are so far divorced from it that they're not actually part of your complaint. We have all imagined idiosyncrasies where someone might be wrongly disciplined. But the Supreme Court ruled it out on a class level basis, on a type basis, which is not our work. That is the work of the Supreme Court. And it can only work on a type basis, because whatever rule this Court comes up with for this huge interest is going to apply to constitutional rights as well. Free speech and free exercise would be examples the Supreme Court used to identify what is an intangible harm, what is an abolishment of an intangible right. Statutory rights, the law says, the source of the right cannot be a decisional harm in your reputation. So I'm going to point you directly to the statute. So in the statute itself, the definition of consumer report in Section 1681A.D.1, and you'll bear with me, is any written oral or other communication of any information by a fair reporting agency that bears on the consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living. The question before this Court is, are these types of allegations, representing the allegations after the inaccuracies to your employment history, to your education level, to your economic health, to your age and to your marital status, do they, are they tethered or are they divorced? Does the Supreme Court's work on the symptoms of divorce, are they tethered to the interests that motivated Congress to continue to be interested by selection? If you can show that, which we believe we easily can, no further showing of the number one Congress identified is necessary. And I would point the Court also to Justice Thomas' concurring opinion. I understand it was a concurring opinion and no one else joined, but what I think is really important about it is not who joined Justice Thomas, but who Justice Thomas joined. Justice Thomas is well aware of concurring a judgment versus joining an opinion. And his opinion, which even Spokio agrees is more square with our theory of the opinion, he joined it. He would not have joined the opinion if he shared Spokio's view of what the Court did. Justice Thomas was quite clear that once Congress has done its job, once Congress has identified a concrete, legally protected interest, that is all that is required. We also know later on from the FOIA cases and from the Lincoln case, the FOIA case, which is an indivisible, concrete interest, and Justice Scalia's opinion in the Court makes that clear, is a statutory right to records. Once you show you have a statutory right to those records, no other showing, and I don't mean to be a broken record, but I do think that's the key language of the opinion, no other showing of the right Congress identified is required. A person before a record request doesn't have to show that they need the record for some personal purpose. If they don't have the record, it would be harmed in some deemsimple personal way. It's a statutory right. The Supreme Court has found it to be concrete. No other showing is required. And beyond that, there really is no other basis to deny our claim in any source of harms, because these were indivisible, concrete harms. And by having three categories of information we're talking about here, Congress was clearly motivated by the concern that, according to the historian, educational history, in categories like this, go right to the heart of what was going on in 1970 when this election was faced, that reporting agencies were issuing reports that were harming people. But the problem was, this is what led to the amendments in 1996 that allowed for statutory damages. It was enormously difficult to prove a measure for the reasons which it should have been identified. And common law courts and legislators of the U.S. Republic have the right to waive the duty to show actual harm in cases like this. But damage may be presumed to be a legislative decision that's statutory damage. It's not concrete. It's not concrete. They provide the remedy, right? But the question is, in the legislature, within its Article I power to do so, does it violate Article III by requiring it to be no further showing? The answer is no. We know that's the copyright. We know that's the various areas of the law. I'm just waiting for the other decision. What I'm trying to sort out is a rule in your favor. Last time you were in front of us in the Supreme Court, they can't ignore a decision. But where did we go wrong is you interpret the Supreme Court's analysis. Did I correct your opinion? They believe this Court, when they say, why didn't the concreteness requirement that emerged, particularization, which is not in the Supreme Court, and it's not a report that was inaccurate, but did it examine whether that violation caused a concrete, indelible harm. And the Supreme Court also said it offered no comments on whether this work has been, you know, whether it was right or wrong, or offered no comments on what might be the answer. What we need is for the law to take a fresh look to see whether the right Congress created, and Congress has a role here, the Supreme Court said Congress's judgment is instructive, which I take back to your point. If it was about Mr. Robbins' personal reputation, there would be no reason why Congress's judgment would be instructive. There would be nothing for it to be instructive about. We need to focus the Court's robust transparency focus to what Congress did and whether it created a concrete, intangible harm. I'm not sure if I answered that correctly. You may do so, Counsel. That's fine. We'll hear from the other side. Thank you. Thank you, Your Honor. If the Supreme Court may answer me. This is for our colleague from Spokane. I'd like to start quickly. I'm Mr. Tom's client. I think it's important to separate interest from injury. As several members of the Court have said, the focus is on harm and injury, not on interest. Take the first example, the First Amendment example that Mr. Clark is avoiding. It's true that we all agree we have a free speech rights and interests, but one can't assert a free speech claim unless the government action has harmed the individual by preventing him or her from engaging in that right. So, there has to be harm in order to get into court. And so, I think the question here, and I'm sorry both the jury and the judge are standing, but what the Supreme Court think, and I think what the Supreme Court was saying was, first of all, merely pleading the elements of the clause of action does not automatically establish standing. We are merely establishing a statutory violation. There can be, there has to be harm. There is concrete harm, as the Court said, and concrete harm is real. So, there has to be something in the real world. And I think that. That takes me back to my question, which I would appreciate your answer to. Our job is to determine whether or not there is standing. Our opinion was vacated. So, we're starting over. And the question in front of us is whether the district court, properly or improperly, just used the case for like Article III standing. So, it appears to me that our job is to look at the complaint and determine whether it states enough facts to establish standing under Article III without regard to the nice case of the principles that the lawyers are interested in having us develop for future cases or whether they can certify the class of interests that have been given on our job. So, why isn't it enough that he has said, I'm trying to get work, I was unsuccessful, and it's your fault. Now, whether you can prove that is an entirely separate issue, but why isn't that enough for standing? Well, I think that is certainly a question that the Court can address. It's the basis for the district court's dismissal, was its conclusion that the allegations of the complaint didn't show harm or a risk of harm. So, it seems to me that... Well, in fact, I think a fair reading of it is that I tried to get work, I couldn't, and it's your fault, and also I have emotional distress damages because I couldn't find work. That's pretty concrete and it's pretty personal in particular. So, without regard to whether it's provable, why isn't that enough? Because I think what's missing, obviously the allegations have to allow a plausible inference for the it's your fault part of the equation. And it's really not. That's not about standing. Yes, it is. That's about traceability. No, I think it is, Your Honor. I think it is because obviously standing has to do with the harm has to be traceable to the defense of the act. That's another element of the standing equation. And so, here, I think if you look at paragraphs 34 and 35 of the amended complaint, which are really the operative paragraphs, they say nothing about how the information on Spokio had anything to do with the task that a defendant needed to get to get employment. In fact, they are basically two separate statements. There were inaccurate facts about me. I couldn't get employment. And then there's a conclusory statement that the defendant has caused factual harm to plaintiff's employment prospects, but no specifics about how that's happened. Right. But there are other allegations in the complaint about how employers used this information widely and so on and so forth. So, if you draw all the inferences in their favor, as we're required to do, there's at least a scintilla of traceability. Well, respectfully, Your Honor, I think the way the Supreme Court has interpreted it, and, again, the need for plausibility is awfully hard, because there's really nothing here about these employers. There's general statements about Spokio. But when it comes to these specifics, there's nothing specific about any employer that the plaintiff either contacted or could have contacted or might have contacted. And we also have the problem that these facts on their face, because they show the plaintiff's even more favorable, it's hard to say, seeming alone without some indication that someone looked at them and there was adversity. They provide a plausible inference. But let me also add, where I think my friend doesn't really want to go down this road, because the real world fact, as Your Honor alluded to, is this is about classability. And so, as soon as that evades this fraudulently seeming, the classability goes down the drain. So, I think that's a possibility on our part. And obviously, you know, from Spokio's perspective, if that's the basis on which the plaintiff is upheld, then it's impossible to allow that again. If you're saying that he pledges some concrete offenses to his employment, then he disqualifies himself as a classmate. His standing is upheld based on the specifics about Mr. Robinson and what happened to him, as opposed to some general position about inaccuracies generally. Then each member of the class will have to establish standing based on their approach. And that will be an individualized issue that will make it very hard for the disqualified class. He's alleged a general reputational damage by an allegation of false information. That would be an allegation of a possible cause. But if the basis for harm or maybe, to a greater extent, I think the hypothesis is that the basis for upholding standing here would be you injured my employment prospect by this information. Is that the basis? That every other class member would have to show some kind of injury to their employment prospect or to some other protected interest, but it would require a person-by-person decision. That's not what the goal of a class action. That would make it impossible to have a class action. So, I think that's sort of background. I know you don't have that issue in front of us at the moment, the class ability. No. But I just think it's a reality that around the case. I need to respond to Mr. Consovoy's argument about this intangible harm. Maybe it would help to sort it out, because I'm not sure I followed it. I'm still stuck on Lujan at the moment. I think Lujan is an important case, especially Justice Kennedy's concurrence, because what Justice Kennedy said is that Congress can elevate the contingent effect of injury, some injury that's real, and make it actionable. And so the question, I think, is has Congress done magic? Has Congress said, we were just talking about the ordinary standing rules, the otherwise applicable rules. If we don't look at something special that Congress might have done in the Fair Credit Reporting Act.  Actionable in federal court, an injury that otherwise wouldn't meet the rules is likely to do that. I'm not sure that you wouldn't otherwise meet the rules. Going back to the way the case has been argued, in the sense that Judge Mayo has discussed it, which is even in common law, when you have the right to have the truth told about in public, you can't go around just lying about the ultimate shame and detriment that's actionable. So why doesn't it fall within the otherwise actionable framework? Well, as we discussed in our briefs here, and even more detailed in our briefs in the Supreme Court, in common law, defamation requires proof of actual harm except for a very small category of defamatory statements. Basically, infectious disease, total inability to engage in one's trade or commerce, or something like that. They were a very small category of things that were actionable, but they have proof of actual harm. Everything else required actual harm, which is what we're talking about. So I think that's the problem with that analogy. But if I can turn back to the Fair Credit Reporting Act, that came in quite late. I was in large public common law courts. I thought it was defamatory per se. By saying any false information about the general reputation of a consumer is similar to defamation per se. It doesn't depend on that. It doesn't have to be defamation per quote. I think you said it. I did. Is that what they did here? Well, I think Congress could do that within limits of the Supreme Court, but it's exactly what they did not do here. And I think it's important to look at the Fair Credit Reporting Act and how it was enacted. When the statute was originally enacted, the private clause of action required proof of actual harm. There were no statutory damages. So all of the regulatory provisions in the Fair Credit Reporting Act, as it was originally enacted, were only actionable by a consumer upon proof of actual harm, because the only recovery was actual damages. So, clearly, the original enactment of the SCRA didn't do just what Judge Bates is saying, which is to expand the universe, because Congress created a private clause of action with limits we can understand. So then the question is, when Congress added the statutory damages provision in 1996, is that evidence that Congress did something different? And we think it's not, for two reasons. First of all, excuse me, as the Supreme Court said in the DOJ's, which we quote in our brief, and is true in the copyright area and a number of other areas with their statutory damages, statutory damages are typically thought of as a device for relieving the plaintiffs of the burden of proving the amount of harm, not proving actual harm. So simply the addition of statutory damages really can't provide a basis for saying Congress did what you said, Judge Bates, expanded the universe, because it's just as likely that they relieved the plaintiffs of the burden of proving amount of damages in this area where it's quite complicated. The second problem with relying on the statutory damages addition is Congress did not just provide statutory damages for violations of the provisions of the SCRA that relate to inactive statements. It's an across-the-board inactive statutory damages for every willful violation. So the 1996 Act can't be taken as Congress looking at inaccuracy and saying in the consumer context any inaccuracy is something that should be actionable, so we're going to provide statutory damages. For that reason, all willful violations give rise to statutory damages. So for that reason, I think the whole theory that the SCRA did something to elevate any previously non-actual intangible injury to actual status just doesn't hold water. It's also important, I think, to say that in the Supreme Court's own opinion, Mr. Consoly referred to the zip code example, the Supreme Court recognized every inaccuracy isn't going to be enough to satisfy Article III. And in footnote 8, which is attached to that zip code sentence, the Court said whether other false information is in the zip code category or not is something for it to be considered unremanded. And we think what that meant is undertaking the inquiry to Judge Mayer was basically hypothesizing at the beginning of the argument, which is, does the complaint allegations show that these inaccuracies, in the words of the Clapper case, that the Supreme Court cited, in this case, create a risk of certainly impending harm that's otherwise required? I think that's a pretty thoughtful answer. The CFPB seems to be bringing an argument as to why the types of inaccuracies here are not on the zip code into the scale. What's wrong with their analysis? I think what's wrong with their analysis is there's no basis for saying you sort of proceed on an inaccuracy-by-inaccuracy basis that you make a categorical judgment. For example? I think that's a backward view now, just that we can't imagine that zip codes matter. Well, I think that zip codes probably does matter, and so, why doesn't this other stuff on your marital status, your work history, the basics about you matter? Well, I think to answer that, first of all, for the categories to matter, you have to find some judgment in the FCRA by Congress that they do matter. And for the reasons that I've just explained, Congress didn't in the FCRA say, we've looked at some categories and not others. It didn't do anything to elevate, to create, to expand the categories of injuries that you write. So, because of the steps in the legislation that I mentioned, and there's certainly nothing in the statute. Mr. Consoy read a list of things that are in the Definition of Consumer Report, but that says nothing about Congress making a determination that some inaccuracies are more important than others. There's just no evidence. Well, do you really think that we aren't allowed to do that, under what the Supreme Court told us? It seems to me that what you're saying is everything has to go in the zip code basket. No, I don't think it does. I think everything has to go in the basket of, just like my previous example, is there something in the allegations here that provides a basis for plausible inference with this inaccuracy harm to this person? In many cases, well, that seems to be a reliably shown question. Well, but it's the job. But I think in some cases, the kinds of inaccuracy, if it's the kind of reports that this person was arrested and they never were, the inaccuracy by itself probably gives you a pretty plausible inference that there could be harm. Again, if you met the second part, which is can you show that somebody actually looked at this or would have looked at it and it would have affected you, it seems to me there are these two questions in the risk of harm category. First of all, is this inaccuracy something that gives rise to a certainly intending risk of harm? And then are there allocations that indicate that somebody who had the power to act with respect to plaintiff either did look at it or there's a significant risk that he or she would? Here we don't have either of those things, and I think the problem is that these categories really don't, by themselves, fire your signals. It's hard to say that that has such a risk of inaccuracy that you can just say, yes, always, if you make a mistake and that someone's harassed, that has to be something that's false. I think that's much harder to do, and again, a lot of buyer's compensation would make him ineligible for a job. I'm sorry, the level of compensation, the level of wealth, would make it look like he would not accept a job. It could, depending on the facts about him, which we don't know. It may be, I mean, that's why I go back to, it seems to me as they say, some of these should be in place, but what about these two men to supply us with the tax money? I think that would be the appropriate course here, it seems to me, that it's quite reasonable to say there are facts here that provide a plausible inference that there was a proper level of risk of concrete harm, but given that the Supreme Court decided this case, and this Court is going to say what the standard is, it would be quite reasonable to say that the plaintiff gets a chance to amend to meet whatever that legal standard is. Can you still do that at this stage? It's your right. I think you can. The case was dismissed. It was here on an appeal from a motion to dismiss. It's a given to amend, and so this Court could say, change in the law, Spokio is decided, we can now interpret what Spokio requires in terms of allegations, and we're going to remand to give the plaintiff another chance to meet that standard. Let me go back to this question of, is there something in the FCRA or in the Supreme Court's opinion that sort of indicates that there's some basis for looking not at what these inaccuracies meant for this plaintiff, but sort of categorically. I think Justice Thomas' opinion was the separate opinion. He did join the majority. He was in a critical vote for the majority, so I think it calms me hard and would be quite unusual to interpret a majority opinion by reference to what, say, a single justice has confirmed. With respect, it was a nice try. It's your honor. And it was actually a nice try because I know that Mr. Consovoy works for Justice Thomas. With respect to FOIA, the injury there, as we talked about in our briefs, and as the Chief Justice wrote in a law review article that we cited in our briefs in this court, the injury is the denial of the request for information. That's what makes it create that particular concrete injury for that particular person that gives them the ability to sue under FOIA. Thank you, Your Honor. Justice Douglas, any further questions? Thank you. No further questions. Thank you again, Mr. Consovoy. You have some reserved time. Thank you, Your Honor. Briefly, please. First, what Spokio is asking here from Congress is to do what I would call an Article 3 bullseye. If Congress decides to protect against reputation and defamation more broadly, then Article 3 would allow them to be forfeited the right to protect it at all. And I would point this court to the previous information in the statute, which Spokio has never been able to address, to preempt the provision of this statute. Section 1681H says, No consumer may bring an actual proceeding in the nature of defamation, invasion of privacy, or negligence with respect to reports of information against any consumer reporting agency. How is lost on me that there would be no connection between common law rights of reputation and defamation per se in the Fair Credit Reporting Act? If the Fair Credit Reporting Act preempts common law claims, defamation, and reputational harms, there seems to be at least well more than is necessary to satisfy what the Supreme Court has said about the relationship between common law and statutory rights, keeping the false subject as a prime example, which is the Supreme Court's decision in Stevens. There is no argument that a modern-day lawyer, a false plaintiff, looks exactly like a informer in 1789. Or the spring case. There is no way that a default aggregator perfectly replicates a common law signage of a copyright claim. In fact, the Chief Justice did say that there was no connection. What the Supreme Court said is, Legislatures have rights in Article I to expand upon the common law and to adapt to the modern era, and it does not forfeit connection to the common law by doing so. The parties agree that that common law would have the right to receive damages with no shortage of tangible harm for a certain allegation as to your trade or profession. Congress made the judgment that in the modern era, inaccuracies such as this in your credit report are exactly the kind of injury to your professional integrity that you need statutory protection. And I would turn to those candidates to try to explain why. And I think my good friend gave the keys away when he said, look at free speech. Because please look at free speech. In a free speech case, excuse me, in a free speech case, here's what a court would never ask. Show me economical. Show me physical injury. Show me psychological. Those things would be for a women's question. For injury. For injury, it is the invasion of the legally protected interest in free speech. Justice, do you agree with that? Are there anything in the majority opinion that would support that analysis? Yes. I'll point you to three or four things. First, the court said, I'm not saying, that infused statutory rights can create infusional interest. It said we have long been okay with infusional interest, see free speech in free exercise. It's the first analogy the court draws after explaining what an infusional interest looks like. It looks like free speech. Instead, it's taking over law, which the court cites repeatedly, that there is no basis for discriminating infusional rights between the source of the rights, and thus, we struggle to be able to bridge the gap between this intangible rights concept and what law does. I do. So, for me, as you know, it's difficult, or the jargon gets in the way, I think, of a more fundamental question, which is, it's the legally protected interest that gives you stability. We have the Constitution, the freely protected interests. We have the Commonwealth, the freely protected interests. But so do the statutes. And the question at this point in time is whether this statute creates a concretely protected interest in the court systems. And what the Supreme Court said, the Supreme Court could have thrown a line at that level, and we would have been pleased if they did. But they said not quite. They said not every procedural violation in this statute is open to infusional interest. So it's on one level below that. That's why Your Honor said subpoenas versus other issues. And the type, Mr. Minkus, I said, I don't know where we're getting there. The word type is in the Supreme Court opinion. These ones are the type, right type cases. Well, what about this passage? On the other hand, Providence cannot satisfy the demands of Article III by alleging a fair procedural violation. A violation of one of the acts of procedural accordance may result in no harm. It may. But it also may not. The question is, is this a fair procedural violation, or in the words of the law, and I'll start with the correct law, or is it a procedural violation that impairs a separate, concrete interest? So does this procedural violation impair the interest, the reputation, the credibleness that are behind the terms I'm reporting? If the court thinks they don't, if the court thinks it inherits their information about your public history, your criminal status, your age, and you're not accountable, is it not a violation? So then, of course, it's a fair procedural violation, especially if you're not accredited by the Supreme Court. Yes, Your Honor. So I don't mean to fight you, Your Honor, but I think you're focusing on the wrong questions, not whether you can use particular statements. It's whether you share information about this issue. It shows the interest that's projected on the paragraph reported. And we know that from the ZIP Code example. We all want to make sure that ZIP Code error would harm a particular individual. If it came to court, we think they have a probable disobedience because the Supreme Court said ZIP Codes are a fair procedural violation. Now, if the court goes online, it's going to get a little bit overexposed into the critical circuit. That's the nature of it. It's brought forward in two cases. That's the law in which this issue is considered in order to inflict a particular injury to itself, a concrete injury. It's not exactly what the law tells us that it in particular does. The law says, as long as it's a legally protected interest, what Smokio does is elaborate. It tells the court, question-wise, how do we know what a statutory violation is in the case of a legally protected interest? They say, look at the title of the law and see what the statute has to address as to whether it's a good connection between the violation or violation of the statutory interest. That's based on ZIP Codes. That's what the court should do. If we were to follow the suggestion made by your opposing counsel of perhaps going to remand to allow the district court to go into remand, would you be able to amend your complaint which gives this individual as to a direct connection between his applying for a job and being told, no, we red Smokio, you can't do the job? We'd have to look at your article to answer the question completely today, but we would respectfully ask the court to not require that. We really don't think it's necessary. It would be invading the privacy of Congress to say, let the Supreme Court say, no additional formality on the one that Congress identified as required. It would be important to say, no, some additional harm in the one that Congress identified is required. Thank you. That's all your time. This is prior to the case. Joe Starkey will be submitted for decision. And the court will adjourn.
judges: O'scannlain, Graber, Bea